CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 1 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **RANDALL J. KEYSTONE,** | ) | **Civil Action No.: 7:12-cv-155** |
| **Plaintiff,** | ) | **Memorandum Opinion** |
| v. | ) | |
| **GEORGE HINKLE, et al.,** | ) | **Hon. James C. Turk** |
| | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

This civil rights action under 42 U.S.C. § 1983 arises from prison officials' failure to use the legal name of the Plaintiff, Randall Keystone, which he alleges is a violation of his constitutional rights. Present before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. ECF No. 15. For the reasons that follow, the Court **GRANTS** Defendants' motion; Plaintiff's case is **DISMISSED WITH PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff's battle to be called by his legal name has been long and arduous. See ECF No. 1-2 at 6-26. Born Randall Keyes (pronounced "like K plus eyes"), Plaintiff changed his last name to Keystone in 1995 because the old name is "offensive to him (family abandoned him, etc.)." ECF No. 1 at 4. When he was incarcerated in 1998, the name Keyes appeared on the sentencing order and thus Keyes was the last name under which Plaintiff was committed to the custody of the Virginia Department of Corrections ("VDOC"). Consequently, VDOC lists—or, at least prior to this litigation, listed—his primary name as Keyes, and VDOC policy dictates that prison staff can refer to him by either name. ECF No. 1-2 at 9 (D.O.P. #050.6-9).

Despite this policy, Plaintiff has been able use Keystone for most, if not all, purposes at the Red Onion State Prison ("ROSP"), where he is incarcerated. However, at the time of the filing of the Complaint, prison officials still printed Keyes on Plaintiff's monthly indigent hygiene bag, monthly legal packet, monthly inmate trust account statements, money transactions receipts, grievance responses, segregation check sheets, and various medical lists. Id. at 5. The result is that prison officials and employees often call Plaintiff by the last name Keyes, which is offensive to him, "usually daily." Id. at 6. Some prison employees allegedly make it a point to call him Keyes even though he has corrected them politely on many occasions. The use of the offensive name Keyes has been ongoing for more than a decade.

Defendants inform the Court that, subsequent to the filing of this action, Keystone is now the name under which Plaintiff will be listed in the main prisoner database, VACORIS, and that Plaintiff has been issued a new ID card displaying both names. Plaintiff confirmed to the Court that the new ID card had been issued, but complains that prison staff still continue to verbally refer to him as Keyes and that the computer-generated accounting records and receipts still bear the name Keyes and not Keystone.[1]

To correct these years of alleged ill treatment, Plaintiff filed this § 1983 suit asserting three claims. Claim 1 alleges that Defendant Looney violated his Eighth Amendment and First Amendment rights when she yelled, "your name is Keyes" in his ear, although she was aware that Keyes is not his legal name. This claim also alleges that Defendants Hinkle and Mathena violated his rights by refusing to remedy the problem in response to his grievances.

[1] The Court has reviewed the additional "updates" (see ECF Nos. 21, 22, & 24) from Plaintiff—filed after the briefing on the Motion to Dismiss was completed—and highlights them as relevant facts, but does not rely on them for purposes of the motion. The Court uses these letters to distinguish between the problems that Plaintiff still faces and those that have been resolved during the pendency of this case, but its decision would be the same with or without them.

Claim 2 is against ROSP staff for forcing him to accept receipt of benefits and services solely under Keyes. Plaintiff alleges these actions violate his Eighth Amendment, First Amendment, and Fourteenth Amendment Equal Protection rights.

Claim 3 alleges that ROSP refuses to issue him an ID card with his legal name on it, violating his Eighth Amendment and First Amendment rights,[2] specifically alleging violations when Defendants Hinkle and Mathena refused to address these issues in the grievance process.

Plaintiff seeks money damages in the amount of $49,999.99, injunctive relief in the form of an order ordering Red Onion to stop denying his legal rights, plus a "declaratory judgment as to just exactly what his legal rights are." ECF No. 1 at 7.

In response to these claims, the Defendants have filed a Motion to Dismiss for Failure to State a Claim. ECF No. 15. The Court Clerk issued a Roseboro notice, ECF No. 17, and Plaintiff responded, ECF No. 18, making the matter ripe for disposition.

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court is obligated to accept as true all of the complaint's factual allegations and take the facts in the light most favorable to the plaintiff. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing the legal sufficiency of a claim, however, the Court "need not accept the legal conclusions drawn from the facts." Id.

[2] In Plaintiff's response to the Motion to Dismiss, ECF No. 18 at 1, Plaintiff informed the Court that he had received a new ID card displaying both names, thus appearing to render any demand for injunctive relief as to his allegations under Claim 3 moot.

## III. ANALYSIS

### A. Claims About the Grievance Process against Defendants Mathena and Hinkle

As to claims against these Defendants, Plaintiff's only allegations are that they failed to remedy the violations of his rights through grievance procedures. However, "inmates do not have a constitutionally protected right to a grievance procedure," Brown v. Va. Dept. of Corr., 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)), and "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." Brown, 2009 WL 87459, at *13 (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). Accepting all facts in the Complaint as true, Plaintiff fails to state a claim upon which relief can be granted against Mathena and Hinkle. Therefore, all claims related to alleged deficiencies of the grievance process and against these two Defendants are dismissed.

### B. First Amendment Claims

Plaintiff alleges in various counts that his First Amendment religious and expressive rights have been violated. See ECF No. 1 at 6 ("my right to freely practice religion and to express myself is violated") (citing U.S. Const. amend. I).

As to Plaintiff's assertion that the Free Exercise Clause protects his right to use his legal name, the Court notes Plaintiff's inconsistent explanations for his name change. The first reason given in the Complaint for the name change was distancing himself from unpleasant memories of his family situation. Id. at 4 ("family abandoned [me], etc."). It is only later in the Complaint that he offers religious justification for the name change. Id. at 6 (Keystone has "religious connotation, like 'Keystone State' of Pennsylvania").[3] The reason for the name change, and the

---

[3] The common nickname of Pennsylvania has no apparent religious significance. See Online Etymology Dictionary, http://www.etymonline.com/index.php?search=Keystone+State (last visited Oct. 24, 2012) ("Pennsylvania was

related desire to use the new name to access prison services, is significant because "[o]nly beliefs rooted in religion are protected by the Free Exercise Clause. . . ." Thomas v. Review Bd., 450 U.S. 707, 713 (1981). Therefore, if the reason for Plaintiff's name change is secular, then he has no claim under the Free Exercise Clause.

Based on the Complaint, the Court finds that Plaintiff has not sufficiently pled the religious motivation underlying his request to use his legal name. He has not identified that the name itself is religious to him or that changing his name stemmed from religious motivations; rather, he vaguely asserts that the name has religious connotations. Therefore, the Court dismisses his Free Exercise claims. Even if the Free Exercise Clause protected his right to use his legal name to obtain prison services, Plaintiff still would not prevail since the Court finds below that Defendants' actions satisfy the Turner v. Safley[4] test applicable to Free Exercise claims.

With regard to Plaintiff's First Amendment expressive claims, assuming that there is an expressive right for a prisoner to use his legal name to obtain prison services be called by his legal name in prison, see, e.g., Felix v. Rolan, 833 F.2d 517, 518-19 (5th Cir. 1987) (noting that a prisoner's right to use his legal name to obtain prison services is not limited to rights protected by the Free Exercise Clause), Defendants' actions comport with the test announced in Turner. Under Turner, prison regulations that impact inmates' constitutional rights are nevertheless constitutional if reasonably related to a legitimate penological interest.[5] Applying this test and relying on Fourth Circuit precedent, the Court finds that the Defendants' actions pursuant to VDOC regulations are in fact reasonably related to a legitimate penological interest.

---

called the Keystone State because of its position (geographical and political) in the original American confederation, between northern states and southern ones.").

[4] 482 U.S. 78 (1987).

[5] Courts consider four factors in determining if a regulation is reasonably related to a legitimate penological interest: (1) whether the regulation rationally and actually advances a neutral and legitimate government interest; (2) whether the prisoner has alternative means of exercising the same right; (3) the effect proposed accommodations will have on prison resources; and (4) whether the existence of "obvious, easy alternatives" that impose a *de minimis* cost reflect the regulation's lack of reasonableness. Turner, 482 U.S. at 89-91.

Plaintiff's current contentions are (1) that some of the prison records still reflect his old name only and (2) that some staff members still call him by his old name or a corruption of it. The Fourth Circuit's thorough discussion of the extremely similar issues in Ali v. Dixon[6] is instructive. There, the Fourth Circuit required that prison officials add a prisoner's religious name to prison records as an a/k/a designation, stating that the failure to do so forced the prisoner to "acknowledge" the offensive name to access services to which he was entitled. Id. at 90-91. The officials were only required to reform prison records, however, to the extent necessary to allow the inmate to access required services. Id. at 90 ("The Eighth Circuit has reached a result very similar to our own by holding that an Arkansas state prison 'need reform its record keeping only to the extent necessary to allow [an Islamic inmate] to receive services and information in his new name within the prison.'" (quoting Salaam v. Lockhart, 905 F.2d 1168 (8th Cir. 1990)).

Additionally, while the Fourth Circuit in Ali required a change to the plaintiff's written record, it rejected—under the Turner test—any requirement that prison staff verbally address him only by his legal name. Id. at 91. The Court noted that allowing staff to continue to use the committed name served the penological interests of staff knowing each inmate by name, which bred familiarity between staff and offender. Id.; see also id. at 90 ("Adding the new name where written is a different kettle of fish than learning two names for one prisoner."); Malik v. Brown, 71 F.3d 724, 727 (9th Cir. 1995) ("The cases have consistently supported [that] an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name.") (citing cases); Thacker v. Dixon, 784 F. Supp. 286, 297 (E.D.N.C. 1991) aff'd, 953 F.2d 639 (4th Cir. 1992) (discussing extensively the use of both names versus only the legal name and concluding that use of both names is constitutionally permissible, but use of only the legal name is not constitutionally required by Fourth Circuit or any other precedent).

---

[6] 912 F.2d 86, 90-91 (4th Cir. 1990)

Here, as to Plaintiff's claim that some prison records still reflect the offensive name Keyes, he has offered no evidence that he is forced to "acknowledge" the offensive name or that he cannot access all services at ROSP under his legal name. Indeed, quite to the contrary, Plaintiff himself has admitted that he does not need to use the old name Keyes to access any services. See ECF No. 18 at 2 ("[T]he Accounting Dept. is still sending me monthly statements and receipts in the old name (Keyes) only. However, when the transactions occur, I allways [sic] use Keystone; the money withdraw forms is all filled-out, signed & witnessed in Keystone."). The constitutional violation noted by the Fourth Circuit in Ali was the prisoner being forced to "acknowledge" the offensive committed name to access services to which he was entitled. 912 F.2d at 90. Plaintiff, by his own admission, can access all services through the name Keystone. Moreover, prison officials are only constitutionally required to amend prison records to the extent necessary to allow the inmate to access required services. Id. at 90. Since prison officials do not force Plaintiff to use Keyes to access prison services and prison officials have already reformed prison records such that Plaintiff can access all services using the name Keystone, use of the name Keyes on the transaction receipts and monthly account statements does not violate the First Amendment. See id. at 90-91.

As for staff verbally referring to Plaintiff by the name Keyes, the Fourth Circuit has already determined in Ali that staff's verbal use of the committed name does not violate the Turner test and thus is not a First Amendment violation. Id. at 91.

While Plaintiff would certainly prefer never to hear or see the name Keyes ever again, the First Amendment does not mandate that result. The Court dismisses Plaintiff's First Amendment claims.

**C. Equal Protection Claims**

Plaintiff alleges a violation of his Fourteenth Amendment equal protection rights in Claim 2. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff, however, has only offered as evidence of a Fourteenth Amendment violation that "they don't do it to other prisoners" and "I believe that violates my 14th amend. const. right to equal protection of laws." ECF No. 1 at 6.

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Second, Plaintiff has offered no indication that these "other prisoners" were similarly situated to him or that unequal treatment was the result of "intentional or purposeful discrimination," Morrison v. Garraghty, 239 F.3d. 648, 654 (4th Cir. 2001); see also Veney v. Wyche, 293 F.3d. 726 (4th Cir. 2002), as required under the second prong. The Court finds that Plaintiff has not met his burden under Iqbal and dismisses his Fourteenth Amendment claims.

**D. Eighth Amendment Claims**

Plaintiff similarly cannot prevail on his Eighth Amendment claims. He alleges that prison officials violated his Eighth Amendment rights in all three claims: Officer Looney screaming "your names is Keyes" in his ear even though she was aware that that was not his legal name (Claim 1), forcing him to accept services and benefits under his old name only (Claim 2), and not providing him with an ID card displaying both names (Claim 3). Nevertheless, the Complaint does not sufficiently allege violations of the Eighth Amendment and thus the Court dismisses these claims.

To properly allege a Section 1983 claim against a state official under the Eighth Amendment, a plaintiff must demonstrate that the alleged conduct is "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). "[T]he inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the 'routine discomfort' that is 'part of the penalty that criminal offenders pay for their offenses against society.'" Smith v. Thomas, 3:10-cv-172, 2011 WL 4836233, at *3 (E.D. Va. Oct. 12, 2011) (quoting Strickler, 989 F.2d at 1380 n. 3), aff'd, 471 F. App'x 165 (4th Cir. 2012) (unpublished). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at 1381). "Name calling is not a constitutional violation." Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985). "Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the 'extreme deprivations'. . . required to make out a conditions-of-confinement claim." In re Long Term Admin. Segregation of Inmates, 174 F.3d 464, 472 (4th Cir. 1999) (citing Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)).

Plaintiff's allegations do not meet the high bar necessary to plead an Eighth Amendment claim. The allegation that Officer Looney screamed in his ear, with no allegation of physical injury, is insufficient to plead an Eighth Amendment claim. The alleged injury Plaintiff suffered

from this and other incidents[7] is that it caused him headaches, depression, sometimes loss of sleep and appetite, and stress. ECF No. 1 at 6. The Fourth Circuit has already rejected the sufficiency of these symptoms for purposes of the injury prong. See In re Long Term Admin. Segregation of Inmates, 174 F.3d at 472. Furthermore, the name calling in Martin, using an obscenity in referring to a prisoner, did not violate the Eighth Amendment; use of an obscenity seems more egregious that the "name" calling in this case. See Martin, 780 F.2d at 1338.

Similarly, the Court dismisses the rest of Plaintiff's Eighth Amendment claims. Plaintiff claims that prison officials condition receipt of services and benefits on use of the old name only, but Plaintiff has admitted he is never required to use Keyes to access services to which he is entitled, see Ali, 912 F.2d at 90, even the financial services that seem to be his primary concern. The mental stress and frustration caused by seeing his old name on receipts and month-end accounts statements is insufficiently serious for purposes of the Eighth Amendment.[8] Likewise, even if the injunctive relief sought in Claim 3 is not moot due to Plaintiff's receipt of an ID card bearing the name Keystone, absent an allegation that Defendants are blocking actual access to services; Plaintiff has no claim under the Eighth Amendment.

## IV. CONCLUSION

The Court grants the Motion to Dismiss in all respects, finding that Plaintiff has not sufficiently pled allegations that state a claim to relief. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss in all respects. An appropriate order shall issue this day.

---

[7] It is difficult to trace the injuries Plaintiff suffered to distinct actions that prison officials took; therefore, the Court considers them in the aggregate. *In toto*, Plaintiff's injuries are not sufficiently serious to support an Eighth Amendment claim.

[8] Though it is not relevant to the analysis, the Court shares the Plaintiff's optimism that the transition of the financial system currently scheduled for November 1, 2012 will resolve the issue. Given that the new system is called the CORIS Financial System, it presumably retrieves information from the CORIS database, where Keystone is listed as Plaintiff's primary name.

ENTER: This 31st day of October, 2012.

Hon. James C. Turk
Senior United States District Judge